UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF MANSON CONSTRUCTION CO.　　　CIVIL ACTION

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　NO. 11-3041 C/W 11-3092
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　SECTION "A"(3)

## ORDER AND REASONS

Before the Court is a **Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12 (b)(1) On Grounds of Eleventh Amendment Immunity (Rec. Doc. 15)** filed by third-party defendants the State of Louisiana, through the Office of Coastal Protection and Restoration ("the State"). Third-party plaintiffs Pelican Island Oysters, Inc., Mitchell B. Jurisich, Jr., Mitchell B. Jurisich, Sr., Frank Jurisich, Althea Lynn Jurisich, Dannell Jurisich, Gulf Wave Oysters, Inc., Gulf Star Oysters, Inc., Little Mitch, Inc., Little Frank, Inc., Shell Island, Inc., Bayou Canard, Inc., Grasshopper Oysters, Inc., Prince Charming, Inc., Jurisich Oysters, L.L.C., and G.I. Joe, Inc. (Collectively, "Claimants") oppose the motion. The motion, set for hearing on June 20, 2012, is before the Court on the briefs without oral argument.

**I.　　BACKGROUND**

This case involves losses allegedly incurred by numerous Southeast Louisiana oyster harvesters as a result of dredging operations performed by vessel owners at the direction of an agency of the State of Louisiana.

Vessel owners Manson Construction Co. and Great Lakes Dredge & Dock Co., LLC, (collectively "Complainants") assert that between June of 2010 and April of 2011, Complainants' vessels performed certain dredging operations and offloaded materials in

1

designated rehandling sites as a part of the "Barrier Berm Project."[1] According to Claimants, who are commercial oyster harvesters with oyster leases located in the coastal waters of Southeast Louisiana, said operations involved dredging and pumping sand near or upon Claimants' oyster leases.

Claimants subsequently alleged that they sustained damage to their oyster leases as a result of the dredging operations, and filed suit in the Twenty-Fifth Judicial District on June 10, 2011.[2] Claimants sued the State, as well as Complainants, two state contractors, and several subcontractors,[3] based on those defendants' participation in the Barrier Berm Project. In the state court complaint, Claimants assert that they have a proprietary interest in and were the lease holders of numerous state waterbottoms used for oyster bedding purposes located in the Parish of Plaquemines, Louisiana. Claimants allege that Complainants' vessels and tows crossed their oyster leases, causing wheel washing, and that these operations rendered the leases unsuitable for oyster evaluation purposes. According to Claimants, Complainants' activities resulted in a dramatic increase in oyster mortality rates on the oyster leases and water bottoms. Claimants

---

[1] Complainants assert that their work on the Barrier Berm Project was performed under the specific direction and control of the State of Louisiana through the Office of Coastal Protection and Restoration Authority, the United States Army Corps of Engineers and the Commander of the National Incident Command for the Macondo Well casualty, which were acting under authority pursuant to Acts of Congress and the laws of the State of Louisiana.

[2] See <u>Pelican Island Oysters, Inc., et al. v. Louisiana Office of Coastal Protection & Restoration Authority, et al.</u> 25th Judicial District Court, Parish of Plaquemines, Docket No. 58-813, Div. B.

[3] Third-party defendants, including The Shaw Group, Inc., Shaw Environmental & Infrastructure, Inc., C. F. Bean L.L.C., CH2M HILL, Inc., Weeks Marine, Inc., BFM Corporation, L.L.C., John Chance Land Surveys, Inc., Coastal Planning & Engineering, Inc., and Stuyvesant Dredging, Inc.


further alleged that the State should be held liable for negligently authorizing and supervising Complainants' operations.

On December 9 and December 16, 2012, Complainants Manson Construction Co. and Great Lakes Dredge & Dock Co. filed separate Complaints for Exoneration from or Limitation of Liability in this Court.[4] Complainants each sought statutory relief under the Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, as a result of damage allegedly caused to the oyster leases owned by Claimants. Said complaints were later consolidated into the instant action (**Rec. Doc. 5**).

On March 19, 2012, Claimant oyster harvesters filed an Answer and Claim in the instant consolidated limitation proceedings (**Rec. Doc. 13**). The claim essentially reiterates the allegations of the state court complaint: that Complainants negligently conducted dredging operations upon and in the vicinity of Claimants' oyster leases, and that Complainants' activities have resulted in excessive siltation, damage to oysters, and other harmful effects to the water and waterbottoms on said oyster leases which make them unsuitable for oyster cultivation purposes. According to Claimants, Complainants' actions have diminished the value of Claimants' leasehold interests and have resulted in severe losses of income to Claimants.

Claimants also filed a third-party complaint against the State, asserting jurisdiction based on 1) admiralty pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. §

---

[4] Manson Construction Co. is the owner and operator of the Hopper Dredge GLENN EDWARDS and Hopper Dredge BAYPORT. Great Lakes Dredge & Dock Co., LLC, is the owner and operator of the dredges ALASKA, CALIFORNIA, TEXAS, TERRAPIN ISLAND, LIBERTY ISLAND AND PADRE ISLAND and owner *pro hac vice* and operator of the dredges TERRAPIN ISLAND and LIBERTY ISLAND. GATX Third Aircraft Corp., is the owner of the dredge TERRAPIN ISLAND. CEF 2002, LLC, is the owner of the dredge LIBERTY ISLAND.

1333; 2) federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Complainants have indicated that they are exempt from liability under the Oil Pollution Act, 33 U.S.C. § 3121; and 3) federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Complainants have indicated that the activities causing the alleged injuries were "removal actions" designed to contain and remove oil associated with the Deepwater Horizon oil spill disaster on the Outer Continental Shelf, thus triggering OCSLA jurisdiction pursuant to 43 U.S.C. § 1349.

The State subsequently filed the instant motion to dismiss the third-party complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) (**Rec. Doc. 15**), requesting that the Court dismiss the claims against it in this matter on the grounds of the State's Eleventh Amendment right to sovereign immunity against suits in federal court. The State asserts that it has not waived its sovereign immunity by any actions or by legislative enactment. Claimants counter that the State waived its right to claim state sovereign immunity in this Court when it filed multiple lawsuits seeking to recover its expenses from third parties for the same actions which allegedly caused Claimants' damages.

## II.     STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and possess power over only those cases authorized by the United States Constitution and federal statutes. Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996). If a district court lacks jurisdiction over the subject matter of a plaintiff's claims, dismissal is required. See Fed.R.Civ.P. 12(b)(1). The lack of subject matter jurisdiction may be raised at any time during the pendency of the case by any party or by the court. See Kontrick v. Ryan, 540 U.S. 443, 456 (2004)("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest

appellate instance."); McDonal v. Abbott Labs, 408 F.3d 177, 182 n. 5 (5th Cir. 2005)("[A]ny federal court may raise subject matter jurisdiction *sua sponte*.").

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th Cir. 2001); see also Barrera–Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum. See Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citing McDaniel v. United States, 899 F.Supp. 305, 307 (E.D.Tex. 1995)). The standard for review of a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6); that is, a court may not dismiss a claim unless it appears certain that the "plaintiff cannot prove any set of facts in support of [his] claim which would entitle [him] to relief." United States v. City of New Orleans, 2003 WL 22208578, at *1, No. Civ. A. 02-3618 (E.D.La. Sept. 19, 2003) (quoting Benton v. United States, 960 F.2d 19, 21 (5th Cir. 1991)); See also Williams v. Wynne, 533 F.3d 360, 364–65 n. 2 (5th Cir. 2008) (observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion).

### III.   LAW AND ANALYSIS

A.      The Eleventh Amendment and Sovereign Immunity in General

The Eleventh Amendment of the U.S. Constitution provides as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

This language expressly encompasses not only suits brought against a state by citizens of another state, but suits against a state by citizens of that same state as well.  See Hans v. Louisiana, 134 U.S. 1 (1890) and Papasan v. Allain, 478 U.S. 265, 276 (1986); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984); Edelman v. Jordan, 415 U.S. 651, 663 (1974).  Although the amendment refers only to suits "in law or equity," a state's sovereign immunity under the Eleventh Amendment extends also to suits brought under the admiralty and maritime jurisdiction of the federal courts. Ex parte Madrazzo, 32 U.S. (7 Pet.) 627 (1833); Ex parte State of New York, 256 U.S. 490 (1921); Intercoastal Transportation, Inc. v. Decatur County, Georgia, 482 F.2d 361 (5th Cir. 1973)(overruled on other grounds).  In addition, "a state's Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the state.  Perez v. Region 20 Educ. Service Center, 307 F.3d 318, 326 (5th Cir. 2002).

In general, therefore, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.  Lewis v. University of Texas Medical Branch at Galveston, 665 F.3d 625, 630 (5th Cir. 2011) (citing Pennhurst, 465 U.S. 89, 100 (1984)).  This jurisdictional bar applies regardless of the nature of the relief sought.  Id.  However, a state's Eleventh Amendment immunity from suit in federal court is not absolute.  See Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n, 662 F.3d 336, 340 (5th Cir. 2011).  A state's

immunity may be abrogated by Congress as a means of enforcing § 5 of the Fourteenth Amendment.  Id.  (citing Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999)).  A state may also waive its Eleventh Amendment immunity by voluntarily invoking federal court jurisdiction, or by making a "clear declaration" that it intends to submit itself to federal court jurisdiction.  Id.

The Supreme Court has established that the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one."  Sossamon v. Texas, 131 S.Ct. 1651, 1658 (2011)(quoting Coll. Sav. Bank, 527 U.S. at 675).  A State's consent to suit must be "unequivocally expressed" in the text of the relevant statute.  Id. (citing Pennhurst, 465 U.S.at 99; see also Atascadero State Hospital v. Scanlon, 473 U.S. 234, 238, n. 1, 239–240 (1985)).  Only by requiring this "clear declaration" by the State can we be "certain that the State in fact consents to suit."  Id. (quoting Coll. Sav. Bank, 527 U.S. at 680).  Waiver may not be implied.  Id.

For these reasons, a waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign."  Id. (quoting Lane v. Peña, 518 U.S. 187, 192 (1996).  The Court has specifically held that a State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court.  Id.  (Citing Coll. Sav. Bank, 527 U.S. at 676).

B.  Sovereign Immunity in Limitation of Liability Actions

The instant matter involves not a standard tort suit but a limitation of liability action filed under the Limitation of Liability Act ("the Act").  The Act provides for the enjoining of pending suits against shipowners and their consolidation in a single federal court "so that liability may be determined and limited to the value of the shipowner's vessel and freight pending."  2 Thomas J.

Schoenbaum, Admiralty & Maritime Law § 15-1, p. 137 (2d ed. 1994).  Because the Act was "badly drafted even by the standards of the time," the Supreme Court codified a procedure for its implementation in Rule F of the Admiralty Rules.  Id. at § 15-1, p. 137; § 15-4, p. 144.  Rule F provides a single forum for the determination of "(1) whether the vessel and its owner are liable at all; (2) whether the owner may in fact limit liability to the value of the vessel and pending freight; (3) the amount of just claims; and (4) how the fund [containing the value of the vessel and freight] should be distributed to the claimants."  Id. at § 15-5, p. 144.  While a shipowner may only file a petition for limitation in admiralty jurisdiction in federal district court, he or she may plead limitation as a defense to an action seeking damages in federal or state court.  Id. at § 15-5, p. 144-45 & n. 6.

The burden of proof in a limitation proceeding parallels that in a standard suit for damages.  Claimants against the shipowner must prove the vessel's negligence or unseaworthiness caused their losses.  If they so prove, the burden shifts to the shipowner to prove there was no "design, neglect, privity or knowledge" on his or her part.  Id. at § 15-5, p. 150. "If the shipowner is not exonerated," but the court finds he or she is entitled to limitation of liability, "payment to claimants is made on a pro-rata basis," generally out of the "security deposited with the court."  Id. at § 15-7, p. 155.

       i. Limitation Proceedings are not "Suits Against a State" Proscribed by the Eleventh Amendment

Other circuits have held that limitation proceedings do not constitute "suits against a state" barred by the Eleventh Amendment.  In Bouchard Transp. Co., Inc. v. Updegraff, 147 F.3d 1344 (11th Cir. 1998), the Eleventh Circuit found that the State of Florida was not entitled to Eleventh Amendment sovereign immunity from a limitation of liability proceeding initiated by

vessel owners, in which the State had filed various oil pollution claims under state and federal law.  In Magnolia Marine Transport Co. v. Oklahoma, 366 F.3d 1153 (10th Cir. 2004), the Tenth Circuit held that a limitation of liability action was analogous to a bankruptcy action and thus did not violate state's Eleventh Amendment immunity.  In that case, a tugboat owner involved in a collision filed a limitation of liability action in federal court; the State of Oklahoma filed suit in state court, which was then removed to federal court and consolidated with the limitation action. Id. at 1154.  The state subsequently filed a motion to dismiss the limitation action based on sovereign immunity; said motion was denied on the basis that a limitation action does not constitute a suit "commenced or prosecuted against" the state in violation of the Eleventh Amendment.  Id. at 1156.

Similarly, a court of this district has found that "a limitation of liability action is so thoroughly defensive in nature that it falls wholly outside the scope of 'suit against a state' as used in the Eleventh Amendment."  Application of Sand Bar I, Inc.,1992 WL 84277 at*3 (E.D.La., April 23, 1992).  In Sand Bar I, the Court denied the State of Mississippi's motion to dismiss a limitation action filed by the owner of a vessel which struck the Interstate 110 Bridge, finding that "[a] petition for limitation of liability is nothing more than a statutory procedure to secure a vessel owner's rights in defending a prospective suit for damages.  It is not a suit itself, as contemplated by the Eleventh Amendment, and thus not barred by that Amendment's protection of sovereign immunity."  Id.

The court in Sand Bar I based its finding in large part on the Supreme Court's decision in Florida Dep't of State v. Treasure Salvors, Inc., in which the Supreme Court held that a warrant to arrest sunken vessel artifacts was not a suit barred by the Eleventh Amendment.  Florida Dep't

of State v. Treasure Salvors, Inc., 458 U.S. 670, 699 (1982).  However, as the court in Sand Bar I noted, a crucial part of the Supreme Court's Florida Dep't of State decision was that a warrant was "not an *in personam* action brought to recover damages from the State."  Sand Bar I, 1992 WL 84277 at*2 (quoting Florida Dep't of State, 458 U.S. at 699).  The court in Sand Bar I applied the Supreme Court's reasoning on warrants to limitation of liability actions, and accordingly found that the Eleventh Amendment did not bar a limitation of liability action as a suit against a state.  Id. at *3.

       ii.  The Instant Third-Party Complaint is a Suit Against the State

  However, though this Court has held that a limitation of liability action does not constitute a suit against the state and is not subject to dismissal based on sovereign immunity, it is clear that Claimants' third-party complaint filed within the limitation action *is* barred by the Eleventh Amendment.  Claimant oyster harvesters filed a third-party complaint pursuant to Rule 14(c) of the Federal Rules of Civil Procedure against the Office of Coastal Protection and Restoration.  The Office of Coastal Protection and Restoration is a subordinate agency of the government of the State of Louisiana.  The third-party complaint seeks damages which, if Claimants are successful, will have to be paid out of the public treasury of the State of Louisiana.  See Complaint of Valley Towing Service, 581 F.Supp. 1287, 1289 (D.C.Mo. 1984).  The State argues that sovereign immunity under the Eleventh Amendment thus extends to the Claimants' third-party complaint against the State, and that the complaint must be dismissed for lack of jurisdiction.  The Court agrees.

  In Oneida County, N.Y. v. Oneida Indian Nation of New York State, the Supreme Court denied a similar attempt to circumvent a state's Eleventh Amendment immunity through the

employment of a procedural device, holding:

> The counties' cross-claim for indemnification raises a classic example of ancillary jurisdiction. See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The Eleventh Amendment forecloses, however, the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). As we held in Pennhurst: "[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." Id., at 121, 104 S.Ct., at 919. The indemnification claim here, whether cast as a question of New York law or federal common law, is a claim against the State for retroactive monetary relief. In the absence of the State's consent, id., at 99, 104 S.Ct., at 907 (citing Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883)), the suit is barred by the Eleventh Amendment. Thus, as the Court of Appeals recognized, whether the State has consented to waive its constitutional immunity is the critical factor in whether the federal courts properly exercised ancillary jurisdiction over the counties' claim for indemnification. Pennhurst, *supra*.

Oneida County, N.Y. v. Oneida Indian Nation of New York State, 470 U.S. 226, 251 (1985); see also In re Secretary of the Dep't of Crime Control & Pub. Safety, 7 F.3d 1140, 1145 (4th Cir. 1993) (indemnity claim against state was "a claim against the State itself for purposes of the Eleventh Amendment, as it is directed to the Secretary in his official capacity and asks him to pay out funds from the State treasury as retroactive relief for a past wrong" and thus, is barred); Mullin v. P & R Educational Services, Inc., 942 F.Supp. 110, 114–15 (E.D.N.Y. 1996) (denying defendant's cross-claim against the state for indemnification in § 1983 action).

Sovereign immunity extends to bar suits against state agents and instrumentalities when the action is in essence one for the recovery of money from the State, and the instant third-party complaint is clearly a claim against the state for monetary relief. Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997)). Having established that Claimant's third-party complaint constitutes a suit against the state for purposes of Eleventh Amendment immunity, we must turn

11

now to the issue of whether the state has waived that immunity.

### iii.     The State Has Not Waived Sovereign Immunity

Claimants oppose the State's motion to dismiss on the grounds that the State waived its right to claim sovereign immunity by "filing multiple lawsuits seeking to recover its expenses from third parties for the same actions which caused Plaintiffs' damages."  See Rec. Doc. 21 at p. 2.  Claimants assert that the activities giving rise to the third-party complaint (namely, the berm project, the dredging and pumping of sand, and the use of vessels to cross Claimants' leases) are the direct subject of multiple lawsuits filed by the State in federal court against Triton Asset Leasing GmbH, Transocean Holding LLC, BP Exploration & Production, Inc. and other defendants (hereinafter collectively referred to as the "BP Defendants").  In these suits, the State seeks a declaratory judgment regarding liability for "removal costs" and "damages" incurred by the State associated with the 2010 Deepwater Horizon Oil Spill ("Oil Spill").[5]

According to Claimants, the "removal costs" and "damages" forming the basis of the State's federal suits against the BP Defendants include the effects of the berm project which caused Claimants' damages.  Claimants assert that because the activities giving rise to Plaintiffs'

---

[5]     See Claimants' Exhibit A, Complaint for Declaratory Judgment in the matter entitled, State of Louisiana v. Triton Asset Leasing GmbH; Transocean Holding LLC; Transocean Offshore Deepwater Drilling Inc.; and Transocean Deepwater, Inc.,United States District Court for the Eastern District of Louisiana, Docket No. 2:10-cv- 03059-CJB-SS at ¶¶ 5, 8, 9, 12, 45, 49, and 63. See also Claimants' Exhibit B, Complaint for Penalties and Declaratory Judgment in the matter entitled State of Louisiana v. BP Exploration & Production, Inc.; BP Corporation North America, Inc.; BP America, Inc.; BP P.L.C.; Anadarko Petroleum Corporation; Anadarko E&P Company LP; Transocean Holdings LLC; Triton Asset Leasing GmbH; Transocean Deepwater, Inc.; Transocean Offshore Deepwater Drilling Inc. and Moex Offshore 2007 LLC, United States District Court for the Eastern District of Louisiana, Docket No. 2:11-cv-00516-CJB-SS at ¶¶ 3, 20, 79-80, 87-95, 108, 120-122. The State seeks relief pursuant to the Oil Pollution Act, 33 U.S.C. §2701 et seq. and the Louisiana Oil Spill Prevention and Response Act, La. Rev. Stats. 30:2452 et seq.

claims are part of the overall response to and removal activities addressing the spill, and because the State is seeking a declaration of liability against the BP Defendants in federal court for the alleged removal activities, the State should not be permitted to claim immunity against Claimants' third-party complaint regarding the those same alleged removal actions.

The Court does not find this argument persuasive. The State has filed a completely separate lawsuit in federal court against multiple defendants not involved in the present case seeking to recover costs, damages, and penalties associated with the Oil Spill. It is true that when a state voluntarily pursues a claim against another party in federal court, it voluntarily waives its Eleventh Amendment immunity and submits itself to the jurisdiction of the federal court to the full extent required for the determination of *the litigation in question*. See Gardner v. State of N.J., 329 U.S. 565, 574 (1947); See also Clark v. Barnard, 108 U.S. 436, 447–48 (1883), Ford Motor Co., 323 U.S. at 467 n. 12 (emphasis added).

However, the Court finds no support for the proposition that the state waives its sovereign immunity by invoking federal court jurisdiction in an entirely different case; to the contrary, relevant case law indicates that waiver applies to voluntary invocation of federal court jurisdiction only in the "case at hand." See Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613, 619 (2002)(finding that voluntary invocation of federal court jurisdiction by removal is incongruous with a claim of sovereign immunity in that same case; therefore, a state that removes a case to federal court is deemed to have waived immunity).[6]

---

[6] "It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the **case at hand**, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the **case at hand**. And a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could

13

As stated *supra*, the Supreme Court has established that "the test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." Atascadero, 473 U.S. at 241.  The Court finds that the State's filing of separate lawsuits relating to the Oil Spill falls far short of a waiver by the State of its Eleventh Amendment immunity.

Claimants may further contend that the State waived its Eleventh Amendment immunity by filing a claim in this action.  However, the Court in Sand Bar I specifically rejected that argument, finding that "merely appearing in an action by answering a complaint...does not constitute consent absent some explicit language from an authorized representative of the State." Sand Bar I, 1992 WL 84277 at *4 (citing Ford Motor Co., 323 U.S. 459); see also Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 556 n. 6 (5th Cir. 1988) (fact that Board appeared and did not raise Eleventh Amendment defense cannot be construed as waiver absent unequivocal language); Aerojet–General Corp. v. Askew, 453 F.2d 819, 828 (5th Cir. 1971), cert. denied, 409 U.S. 892, 93 S.Ct. 110 (1972) (following Ford Motor Co., declining to find waiver in State's general appearance)).

This Court agrees with the Court's finding in Sand Bar I: the State had to either file a claim in this action or risk forfeiting its right to recover anything from Complainants in the event that Claimants' third-party complaint was not dismissed; filing a claim in the limitation action does not rise to the level of consenting to federal jurisdiction. Id. at *4 (citing Fed.R.Civ.P.Supp.Rule F(4), F(5)).  The Court finds that the third-party complaint filed by Claimants is an action brought to recover damages from the State, that the State has not waived its sovereign immunity, and that the complaint is therefore barred by the Eleventh Amendment.

---

generate seriously unfair results.""  (emphasis added)

### IV. CONCLUSION

The Court finds that the third-party complaint filed by Claimants falls within the prohibitions of the Eleventh Amendment; because the Eleventh Amendment "deprives federal courts of any jurisdiction to entertain" claims entitled to immunity, all claims against the State must therefore be dismissed.  Pennhurst, 465 U.S. at 99 n. 8.

Accordingly,

**IT IS ORDERED** that the State of Louisiana's **Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) on Grounds of Eleventh Amendment Immunity (Rec. Doc. 15)** is hereby **GRANTED**.  Claimants' claims against the State are **DISMISSED**.

This 25th of July, 2012.

_____
UNITED STATES DISTRICT JUDGE